# In the United States Court of Federal Claims

No. 19-148C
(Filed: April 26, 2019)
**\*Opinion originally filed under seal on April 22, 2019**

| | |
|---|---|
| NORTH WIND SITE SERVICES, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) ) |
| Defendant, | ) ) |
| and, | ) ) |
| KŪPONO GOVERNMENT SERVICES, LLC, | ) ) ) |
| Defendant-Intervenor. | ) ) ) |

Bid Protest; Post-award; Judgment on the Administrative Record; Motion to Complete the Administrative Record; Motion to Dismiss for Lack of Subject Matter Jurisdiction; RCFC 12(b)(1); SBA; 8(a) Contract.

*Matthew T. Schoonover,* Lawrence, KS, for plaintiff. *Steven J. Koprince, Ian P. Patterson*, and *Nicole D. Pottroff*, Lawrence, KS, of counsel.

*Richard Schroeder,* Civil Division, United States Department of Justice, Washington, D.C., with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirshman, Jr.*, Director, and *Patricia M. McCarthy*, Assistant Director, for defendant.

*Damien C. Specht*, McLean, VA., for defendant-intervenor. *James A. Tucker* and *R. Locke Bell*, McLean, VA., of counsel.

## OPINION

**FIRESTONE**, *Senior Judge*

This post-award bid protest has been brought by North Wind Site Services, LLC,

("North Wind") against the United States Department of Energy ("DOE") in connection

with an 8(a) small business set-aside contract to supply critical training, information technology, site and facility management, and custodial services at the DOE's Government-Owned Contractor-Operated National Training Center and at DOE Headquarters. After the award to Kūpono Government Services, LLC ("Kūpono") on March 7, 2018, the Small Business Association ("SBA") determined that Kūpono did not qualify as a small business for purposes of the procurement. Kūpono's disqualification is not at issue in this bid protest. At issue is whether DOE violated SBA regulation, 13 C.F.R. § 121.1009(g)(2),[1] by not terminating Kūpono's contract after the Office of Hearings and Appeals ("OHA") affirmed the SBA Area Office's size determination finding that Kūpono was ineligible for the contract.[2] North Wind is also challenging the task orders issued by DOE while awaiting the OHA determination. Amend. Compl. (ECF No. 16) at ¶¶ 64-67, 71-75. North Wind claims that the contracting officer should have terminated the contract and that North Wind should have been selected as the offeror with the second highest rating to perform the remainder of the contract. *Id.* at ¶ 88.[3]

---

[1] 13 C.F.R. § 121.1009(g)(2) provides "[r]esults of an SBA Size determination. . . . (2) A contracting officer shall not award a contract to a protested concern that the Area Office has determined is not an eligible small business for the procurement in question. (i) If a contracting officer receives such a determination after contract award, and no OHA appeal has been field, the contracting officer shall terminate the award. (ii) If a timely OHA appeal is filed after contract award, the contracting officer must consider whether performance can be suspended until an appellate decision is rendered. (iii) If OHA affirms the size determination finding the protested concern ineligible, the contracting officer shall either terminate the contract or not exercise the next option."

[2] Kupono intervened without objection on January 30, 2019. (ECF No. 10).

[3] North Wind conceded during oral argument that DOE does not have to award the contract to North Wind but can also elect to re-procure the services. Oral Arg. 13:03:29-13:03:58.

Pending before the court are the parties' cross-motions for judgment on the administrative record, (ECF Nos. 31, 34, 35), Kūpono's motion to complete the administrative record with a signed copy of Kūpono's contract. Kūpono's Reply, Ex. A (ECF No. 38), and the government's and Kūpono's motion to dismiss North Wind's claims regarding issuance of the task order for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") (ECF Nos. 34, 35). Both the government and Kūpono argue that North Wind's objection to issuance of the task order is barred under 41 U.S.C. § 4106,[4] which bars this court's review of task orders, except in limited circumstances which the government and Kūpono argue are not relevant to this case.

For the reasons that follow, the court finds that DOE was not arbitrary and capricious and acted in accordance with the law when it did not terminate Kūpono's underlying contract after the OHA decision, and therefore, the government's and Kūpono's motions for judgment on the administrative record are **GRANTED**. The court also finds that it does not have jurisdiction over North Wind's challenge to the task orders issued to Kūpono, and thus, the government's and Kūpono's motions to dismiss are also **GRANTED**. In addition, Kūpono's motion to complete the administrative record is **GRANTED.**

---

[4] 41 U.S.C. § 4106(f)(1) provides that "[a] protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for (A) a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued; or (B) a protest of an order valued in excess of $10,000,000."

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    The Solicitation And Contract Award

On June 23, 2017, DOE issued the request for proposals No. DE-SOL-0010843 ("RFP") at issue in this action.  Administrative Record ("AR") 63 (cover letter for RFP). The RFP sought proposals to support DOE's National Training Center ("NTC") in connection with DOE "with a full range of services" including "developing, providing and supporting safety and security classroom and on-line training at the NTC" and "at DOE Headquarters in Washington, D.C., and maintaining the facilities and grounds." *See* AR 63.

DOE explained that the acquisition was "a total set aside for SBA 8(a) program participants under North American Industry Classification System ('NAICS') code 611430, Professional and Management Development Training with a size standard of $11.0 million."  AR 63.

DOE contemplated that it would issue an "Indefinite Delivery Indefinite Quantity (IDIQ) contract . . . against which" it would later issue "Firm Fixed Price and Time and Materials Task Orders."  *See* AR 63.  The contract would "be awarded as a five year IDIQ" (contract or underlying contract or master IDIQ).  AR 68 (Solicitation/Contract/Order for Commercial Items) (block 20, schedule of supplies/services).  The resulting IDIQ was to "consist of a sixty month ordering period." AR 63.[5]

---

[5] The acquisition plan also stated "[t]he objective of this acquisition is to issue a new contract award  . . . as a five year IDIQ; the completion date of the award will be December 13, 2022."

The RFP stated that "for pricing purposes" the performance period divided the 60

month period into 12-month "base periods" for all CLINS, except for CLIN 4000, which

had a 10-month "base period." AR 275. In response to questions from offerors, the DOE

referred to the entire period of performance as "February 1, 2018-January 31, 2023[.]"

AR 296-97 (headings).

The RFP included various clauses from the Federal Acquisition Regulation

("FAR"), including FAR 52.217-8, "Option to Extend Services,"[6] and FAR 52.217-9,

"Option to Extend the Term of the Contract." [7] These options expressly permitted DOE to

extend the contract's duration from 60 months to as many as 66 months.  AR 88 (sec.

C3.ax); AR 3420-21 (Kūpono's contract with the same provisions).[8]

Specifically, the RFP and Kūpono's contract, consistent with FAR 52.217-8 state:

The government may require continued performance of any services within the
limits and at the rates specified in the contract. These rates may be adjusted only
as a result of revisions to prevailing labor rates provided by the Secretary of

---

[6] 48 C.F.R. § 52.217-8, "Option to Extend Services" provides "[t]he Government may require
continued performance of any services within the limits and at the rates specified in the contract.
These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the
Secretary of Labor. The option provision may be exercised more than once, but the total
extension of performance hereunder shall not exceed 6 months. The Contracting Officer may
exercise the option by written notice to the Contractor within ___ [insert the period of time
within which the Contracting Officer may exercise the option]."

[7] 48 C.F.R. § 52.217-9, "Option to Extend the Term of the Contract" provides that "(a) [t]he
Government may extend the term of this contract by written notice to the Contractor within
__[insert the period of time within which the Contracting Officer may exercise the option];
provided that the Government gives the Contractor a preliminary written notice of its intent to
extend at least __ [60 days unless a different number of days is inserted] before the contract
expires. The preliminary notice does not commit the Government to an extension. (b) If the
government exercises this option, the extended contract shall be considered to include this option
clause. (c) The total duration of this contract, including the exercise of any options under this
clause, shall not exceed ___ (months)(years)."

[8] The solicitation was amended several times. *See* AR 264, AR 345, AR 381; *see also* AR 1639
(Source Selection Memorandum, sec. II.B). The amendments are not relevant to this protest.

Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within thirty (30) days of the contract expiration.

AR 88 (RFP); AR 3420 (contract).

The RFP and Kūpono's contract, consistent with FAR 52.217-9, also state:

(a) The government may extend the term of this contract by written notice to the Contractor within thirty days provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least thirty days before the contract expires. The preliminary notice does not commit the Government to an extension. (b) If the government exercises this option, the extended contract shall be considered to include this option clause. (c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed sixty-six months.

AR 88 (RFP); AR 3421 (contract).

DOE received proposals from five firms, including North Wind, Kūpono, and Chenega Healthcare Services, LLC ("Chenega"), a sister company of Chenega Support Services ("CSS"), the incumbent contractor. *See* AR 1645; AR 3585. On March 7, 2018, DOE awarded the master IDIQ to Kūpono. *See* AR 1685. DOE's notice of the award stated that the contract's period of performance would be "a sixty month ordering period from which task orders" would "be issued" and funding would be "at the task order level." *Id*. That same day, DOE notified the unsuccessful offerors that it had awarded the contract to Kūpono. AR 1692, 1697, 1706, 1715 (notices of unsuccessful proposal, dated and indicating transmission to unsuccessful offerors on March 7, 2018). The awarded contract stated that "[t]he Contractor shall commence performance of this contract in accordance with the contract terms and conditions on March 15, 2018 and continue

through March 14, 2023." AR 3428; *see* AR 3401 ("The period of performance consists of a sixty month ordering period commencing March 15, 2018.").

###   B.     Procurement- Related Challenges to Kūpono's Award

On March 9, 2018, Chenega filed a SBA size protest with the contracting officer, asserting that Kūpono had exceeded the solicitation's size standard. AR 1769.  On March 19, 2018, Chenega withdrew that protest.  AR 2349. On March 16, 2018, Chenega protested the Kūpono award to the U.S. Government Accountability Office ("GAO").  AR 2866.  The GAO denied Chenega's protest on June 4, 2018.  AR 3175-76. Chenega then brought a post-award bid protest in front of this court, and on January 11, 2019 this court issued a public opinion denying Chenega's motion for judgment on the administrative record. *See Chenega Healthcare Servs., LLC v. United States*, 141 Fed. Cl. 254, 256 (2019).

On March 14, 2018, North Wind filed a separate size protest with the SBA, alleging among other things that Kūpono was not an eligible small business based on Kūpono's affiliation with a large business.  AR 2416.  On March 19, 2018, North Wind also filed a protest with GAO, alleging that DOE's contract award to Kūpono "was the result of several evaluation flaws[.]" AR 2655. On April 12, 2018, SBA suspended its consideration of North Wind's size protest pending a decision on North Wind's GAO protest.  AR 2711. The SBA requested that the contracting officer notify it when the GAO process was completed.  *Id.*

On June 18, 2018, North Wind withdrew its GAO protest following outcome-predictive alternative dispute resolution conducted the previous week, and GAO closed

its file on North Wind's protest the following day.  AR 3398; AR 3399. As of June 19, 2018, Chenega's and North Wind's GAO protests were no longer pending.  *See* AR 2728. Chenega did not have a pending size protest but North Wind did. On July 20, 2018, the SBA's area office issued a decision on North Wind's size protest finding that Kūpono's annual receipts fell within the size standard for this procurement but that Kūpono was not small for purposes of this procurement based Kūpono's affiliation with a large business joint venture under the SBA's subcontractor rule.  *See* AR 2727-28, AR 2732-33, AR 2736-37. Kūpono filed an appeal with OHA on August 6, 2018. AR 2856.

On August 6, 2018, the contracting officer issued a memorandum. AR 3585. The contracting officer wrote "[o]n the afternoon of July 20th, SBA issued its determination that Kūpono is not a small business for the NAICS code assigned to the NTC requirement" and that "Kūpono has appealed the determination to [OHA] on August 6, 2018." AR 3586. The contracting officer considered what to do next. Under the SBA's regulations, 13 C.F.R. § 121.1009(g)(2), "(i) [i]f a contracting officer receives [an SBA Area Office Determination] after contract award, and no OHA appeal has been field, the contracting officer shall terminate the award."  However, "(ii) [i]f a timely OHA appeal is filed after contract award, the contracting officer must consider whether performance can be suspended until an appellate decision is rendered." Subsection (iii) in that same section provides, "If OHA affirms the size determination finding the protested concern ineligible, the contracting officer shall either terminate the contract or not exercise the next option."

The contracting officer "determined that it was in the best interest of the Government to proceed with the transition to Kūpono and issue task orders to start

performance." The contracting officer documented his rationale in the August 6, 2018 memorandum.  AR 3585-88. On August 6, 2018 the contracting officer decided to allow Kūpono "to go forward with performance under" the underlying IDIQ contract, but did so on a limited basis.  *See* AR 3588.

Specifically, the contracting officer stated that DOE will go forward with performance with Kūpono, but in "consideration of the possibility of the OHA upholding the size standard decision, DOE will only issue Task Orders with a 2 year period of performance." AR 3588. The contracting officer wrote "[a] two year period of performance will allow DOE enough time to issue a new 8(a) competitive acquisition if the OHA upholds the SBA decision that Kūpono is not an eligible business for this award." AR 3588.

 From September 17 through September 19, 2018, while Kūpono's appeal to OHA was pending, the contracting officer issued four more task orders for a term of two years each authorizing Kūpono to perform work under the master IDIQ contract.  AR 3626-27; AR 3663-64; AR 3665-66; AR 3685-86. The task orders' period of performance ended in September 2020. AR 3627, 3664, 3666, 3686. On October 23, 2018, OHA denied Kūpono's appeal and affirmed the area office's ineligibility determination.  AR 2850, 2864.

On November 16, 2018, DOE issued a contract modification making certain revisions to the master IDIQ which had the effect of extending underlying contract until September 2023, but did not change the length of performance for any of the previously issued task orders.  *See* AR 3720-23; *see also* AR 3711-14 (memorandum dated Nov. 1,

2018) ("The new ordering period is reflective of the start date of the transition period (August 8, 2018) and ends sixty months from the start date.").

North Wind filed the protest in this court on January 29, 2019. (ECF No. 1). North Wind filed its amended complaint on February 1, 2019 (ECF No. 16). Briefing was completed on April 4, 2019, and the court held oral argument on April 5, 2019.

## II.    STANDARD OF REVIEW

### A.    Motion For Judgment On The Administrative Record

This court exercises jurisdiction over a post-award bid protest under 28 U.S.C. § 1491(b). In a bid protest, the court applies the standards set forth in 5 U.S.C. § 706, and may set aside an award only if the agency's action was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1252 (Fed. Cir. 2015) (quoting *Savantage Fin. Servs. v. United States*, 595 F.3d 1282, 1285 (Fed. Cir. 2010)). An agency's decision is arbitrary and capricious where the agency "'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

"This standard is 'highly deferential.'" *Sims v. United States*, 125 Fed. Cl. 119, 129-30 (2016), *aff'd*, 655 F. App'x 826 (Fed. Cir. 2016) (quoting *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000)). "The court's task

is to determine whether '(1) the procurement official's decision lacked a rational basis; or

(2) the procurement procedure involved a violation of regulation or procedure.'"

*Palladian Partners, Inc.*, 783 F.3d at 1252 (quoting *Savantage Fin. Servs.*, 595 F.3d at

1285-86). "When such decisions have a rational basis and are supported by the record,

they will be upheld." *NCL Logistics Co. v. United States*, 109 Fed. Cl. 596, 610 (2013)

(quoting *Bender Shipbuilding & Repair Co. v. United States*, 297 F.3d 1358, 1362 (Fed.

Cir. 2002)). Moreover, the court must "uphold a decision of less than ideal clarity if the

agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Ark.-Best Freight

Sys.*, Inc., 419 U.S. 281, 286 (1974) (citation omitted). Furthermore, "'[i]f the court finds

a reasonable basis for the agency's action, the court should stay its hand even though it

might, as an original proposition, have reached a different conclusion as to the proper

administration and application of the procurement regulations.'" *Honeywell, Inc. v.

United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v.

Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).

### B.    Motion To Dismiss Due To Subject Matter Jurisdiction

The standards upon which motions to dismiss for lack of subject matter

jurisdiction can be granted are well-settled. *McKuhn v. United States*, No. 18-107C, 2018

WL 2126909, at *2 (Fed. Cl. May 9, 2018). The plaintiff must establish the court's

subject matter jurisdiction by a preponderance of the evidence. *Fid. & Guar. Ins.

Underwriters, Inc. v. United States*, 805 F.3d 1082, 1087 (Fed. Cir. 2015) (citing *Brandt

v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013)). "In deciding a motion to dismiss

for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual

allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014).

### C.    Motion To Complete The Administrative Record

Where a party seeks to add to the record materials that were generated or considered by the agency during the procurement and decisionmaking process, such a request is viewed as a request to complete the administrative record. This court's rules include a non-exhaustive list of "core documents" relevant to a bid protest. *Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 166 (2011); *see* RCFC Appendix C ¶ 21-24.[9] Among these core documents are correspondence between the agency and the protester, awardee, or other interested parties relating to the procurement, records of any discussions, meetings, or telephone conferences between the agency and the protester, awardee, or other interested parties relating to the procurement, and documents relating to any stay, suspension, or termination of award or performance pending resolution of the bid protest. RCFC Appendix C ¶ 22. Documents such as these "presumptively qualify for inclusion in the Administrative Record." *Dyncorp Int'l LLC v. United States*, 113 Fed. Cl. 298, 303 (2013). By contrast, supplementation of the record with non-core documents is only appropriate when necessary for judicial review—such as where the record raises serious questions concerning the rationality of the agency action. *See Impresa*

---

[9] RCFC Appendix C ¶ 21 states "The United States will be required to identify and provide . . . the administrative record in a protest case . . . ." RCFC Appendix C ¶ 22 states "[e]arly production of relevant core documents may expedite final resolution of the case" and provides a list of the "core documents relevant to a  protest case[.]" RCFC Appendix C ¶ 24 states "[a]ny additional documents within the administrative record must be produced at such time as may be agreed to by the parties or ordered by the court."

*Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1341 (Fed. Cir. 2001).

## III.   DISCUSSION

North Wind brings this protest on two principle grounds. First, North Wind argues that DOE violated SBA's rules by failing to terminate the contract awarded to Kūpono after OHA affirmed the SBA Area Office's determination that Kūpono was not an eligible small business for the procurement at issue. Specifically, North Wind argues the contracting officer violated 13 C.F.R. § 121.1009(g)(2)(iii) which states "[i]f OHA affirms the size determination finding the protested concern ineligible, the contracting officer shall either terminate the contract or not exercise the next option." Second, North Wind argues that each task order issued under the IDIQ contract should be viewed as a separate contract and that the contracting officer violated the same regulation by awarding "a contract" to a party that is not an eligible small business. *See* 13 C.F.R. § 121.1009(g)(2) ("[a] contracting officer shall not award a contract to a protested concern that the Area Office has determined is not an eligible small business for the procurement in question.").

Before proceeding with the merits of North Wind's protest, the court grants Kūpono's motion to complete the administrative record to include a copy of the signed cover page of the contract awarded to Kūpono and signed by both the contracting officer and Kūpono on March 7, 2018. Kūpono's Reply at 5-6. The court finds the contract signed by Kūpono and the Contracting Officer on March 7, 2019 to be the type of correspondence between the agency and awardee categorized as a "core document" under

RCFC Appendix C ¶ 22 and thus, qualifies for inclusion in the administrative record.

Therefore, the court **GRANTS** Kūpono's motion to complete the administrative record.

### A.      DOE Acted In Accordance With The Law When It Elected Not To Terminate Kūpono's Contract

North Wind argues that DOE was required to terminate Kūpono's contract after

OHA affirmed that Kūpono is not a small business for the purpose of this procurement

under 13 C.F.R. § 121.1009(g)(2)(iii). The government and Kūpono argue that by

limiting Kūpono's performance to only two years and agreeing not to issue any further

task orders or to exercise the contract's options but to instead issue a new procurement,

DOE has complied with the SBA's rules, as well as the corresponding FAR provision.[10]

Regarding DOE's compliance with the SBA's rules the court finds that because

this IDIQ contract has "options" under Sections C3.ax and C3.ay, and DOE has agreed

not to issue an option to extend services under the contract or the contract term, *see* AR

3588, DOE has complied with the SBA's requirements.

The FAR defines an "option" to be "a unilateral right in a contract by which, for a

specified time, the Government may elect to purchase additional supplies or services

called for by the contract, or may elect to extend the term of the contract." 48 C.F.R.

§ 2.101.  The Federal Circuit has made it plain that in construing a contract, "the plain

and unambiguous meaning of a written agreement controls.'" *Hercules Inc. v. United*

---

[10] Under FAR 19.302(h), after OHA finds a protested concern ineligible for award after the contract has been awarded, "the contracting officer shall not exercise any options or award further task or delivery orders."

*States*, 292 F.3d 1378, 1380-81 (Fed. Cir. 2002) (quoting *Craft Mach. Works, Inc. v.*

*United States*, 925 F.2d 1110, 1113 (Fed. Cir. 1991)).

Here, as quoted above, Kūpono's contract stated:

> The government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within thirty (30) days of the contract expiration.

AR 3420. The contract further stated:

> (a) The government may extend the term of this contract by written notice to the Contractor within thirty days provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least thirty days before the contract expires. The preliminary notice does not commit the Government to an extension. (b) If the government exercises this option, the extended contract shall be considered to include this option clause. (c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed sixty-six months."

AR 3421.

In view of the plain language defining an "option" under the FAR, North Wind's

argument that the aforementioned provisions in the contract are not "options" and

therefore cannot excuse DOE's failure to terminate Kūpono's IDIQ contract must be

rejected. North Wind's contention that the above-quoted language is not evidence of an

"option" because the language allows for only a "short-term continuity of services

extension" is unpersuasive. *See* North Wind's Sur-Reply at 3 n.5. North Wind conceded

that it had no legal authority for its position. Oral Arg. 12:20:25-12:20:48. Without some

sound reason to reject the plain terms of the contract, the court finds that the subject

contract contains option provisions and that DOE's agreement not to exercise those options but instead to reprocure after Kūpono's task orders end in September 2020 comports with the relevant SBA rule.

Specifically, under section 121.1009(g)(2)(iii) where OHA affirms the ineligibility of a contractor for a procurement after award, the "the contracting officer shall either terminate the contract or not exercise the next option." The plain meaning of the regulation grants the contracting officer discretion to terminate the contract or not exercise an option. Here, the record supports the contracting officer's rational decision to "only issue Task Orders with a 2 year period of performance" to allow "enough time to issue a new 8(a) competitive acquisition." *See* AR 3588. Therefore, the court finds that DOE acted in accordance with the law.[11]

In oral argument, North Wind agreed that its primary complaint is related to DOE's aforementioned failure to terminate Kūpono's contract. Oral Arg. 12:04:16-12:04:40. Nonetheless, the court will review North Wind's other objections to DOE's actions regarding DOE's compliance with the SBA's rules for purposes of completeness.

---

[11] Furthermore, the record shows that DOE acted in compliance with the requirements in FAR 19.302(h). FAR 19.302(h) provides "[i]f the contracting officer has made a written determination in accordance with (g)(1) or (2) of this section, the contract has been awarded, the SBA rulings is received after award, and OHA finds the protested concern to be ineligible for award, the contracting officer shall terminate the contract unless termination is not in the best interests of the Government, in keeping with the circumstances described in the written determination. However the contracting officer shall not exercise any options or award further task or delivery orders." Here, OHA found Kūpono to be ineligible for award, and the DOE's August 6, 2019 memorandum demonstrates why it was not in the best interests of the DOE to terminate the contract. The contracting officer further complied with the FAR regulation because DOE will not exercise any options or award further task orders under this contract.

First, in its amended complaint, North Wind claimed that DOE violated 13 C.F.R. § 121.1009(a)[12] by lifting the stay on Kūpono's contract without a written determination while a size protest was pending before the SBA. Amend. Compl. at ¶¶ 57-63. This argument fails because 13 C.F.R. § 121.1009(a) only regulates the *award* of a contract while the SBA size protest is pending, and here, the contract had been already awarded before any size protest was raised. Thus, the provision is inapplicable.

Second, North Wind alleged that DOE violated 13 C.F.R. § 121.1009(g)(2)(ii), by failing to consider whether performance could be suspended pending OHA's review. Section 121.1009(g)(2)(ii) states "[i]f a timely OHA appeal is filed after contract award, the contracting officer must consider whether performance can be suspended until an appellate decision is rendered." 13 C.F.R. § 121.1009(g)(2)(ii). Here, the record reflects that on August 6, 2018, after learning that Kūpono had filed a timely appeal to OHA, the contracting officer fulfilled this responsibility by considering whether it was in the best interest of the DOE to suspend performance further. The contracting officer memorialized his decision "to go forward with performance under" the underlying IDIQ contract but went forward with performance on a very limited basis.  *See* AR 3588. North

---

[12] 13 C.F.R. § 121.1009(a) provides: "[t]ime frame for making size determination. (1) After a receipt of a protest or request for a formal size determination, the SBA Area Office will issue a formal size determination within 15 business days, if possible. (2) The contracting officer may award a contract after receipt of a protest if the contracting officer determines in writing that an award must be made to protect the public interest. Notwithstanding such a determination, the provisions of paragraph (g) of this section apply to the procurement in question. (3) If SBA does not issue its determination within 15 business days (or request an extension that is granted), the contracting officer may award the contract if he or she determines in writing that there is an immediate need to award the contract and that waiting until SBA makes its determination will be disadvantageous to the Government. Notwithstanding such a determination, the provisions of paragraph (g) of this section apply to the procurement in question."

Wind has not offered the court a basis for finding this decision by the contracting officer, which is supported by the record, was irrational.

Third, North Wind's amended complaint also claims DOE violated 13 C.F.R. § 124.504(d)(1)[13] and 48 C.F.R. § 6.101(b)[14] by allegedly removing work from the 8(a) program by failing to terminate Kūpono's contract. *Id.* at ¶¶ 81-86. The court agrees with Kūpono that neither 13 C.F.R. § 124.504(d)(1) nor 48 C.F.R. § 6.101(b) require agencies to automatically terminate awards to 8(a) firms that ultimately lose a size appeal. Kūpono Cross-Mot. for J. on the Admin. R. ("Kūpono's MJAR") at 34. As demonstrated above, under the SBA rules that govern this case, the contracting officer had the discretion to not terminate the contract and instead, not exercise the next option. Moreover, North Wind's argument is based on the unsupported contention that Kūpono is no longer a member of the 8(a) program. *Id.* at 9. Kūpono is still in the 8(a) program. The SBA found that it was ineligible for the subject contract because of an affiliation it entered into for purposes of this procurement only. AR 2736-37 (SBA stating that "Kūpono is not considered small for the $11 million size standard" and this "determination is applicable only to this procurement"); AR 2864 (OHA affirming the SBA). In view of the foregoing, none of

---

[13] 13 C.F.R. § 124.504(d)(1) provides that "where a procurement is awarded as an 8(a) contract, its follow-on or renewable acquisition must remain in the 8(a) BD program unless SBA agrees to release it for non-8(a) competition."

[14] 48 C.F.R. § 6.101(b) provides that "[c]ontracting officers shall provide for full and open competition through use of the competitive procedure(s) contained in this subpart that are best suited to the circumstances of the contract action and consistent with the need to fulfill the Government's requirements efficiently."

North Wind's arguments regarding DOE's compliance with any applicable SBA or FAR regulations have merit.

**B.      The Court Does Not Have Jurisdiction Over North Wind's Challenge To The Issued Task Orders**

The court now addresses the government's and Kūpono's motions to dismiss North Wind's challenge to the task orders DOE issued under the subject IDIQ contract as outside this court's jurisdiction under RCFC 12(b)(1).  Both the government and Kūpono rely on the Federal Acquisition Streamlining Act ("FASA") of 1994 to support their motions. Specifically, Section 4106(f)(1)(A) in FASA provides that "[a] protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for . . . a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued[.]" "Even if the protester points to an alleged violation of statute or regulation . . . the court still has no jurisdiction to hear the case if the protest is in connection with the issuance of a task order." *SRA Int'l, Inc. v. United States*, 766 F.3d 1409, 1413 (Fed. Cir. 2014). For the reasons that follow, the court finds that it does not have jurisdiction over North Wind's challenge to the task orders.

First, contrary to North Wind's contentions, there is nothing in the record to suggest that the subject task orders increased the scope of the contract. In order for there to be a change in scope, there must be a material change so significant that it amounts to a "cardinal change[.]" *See AT & T Comm'ns, Inc. v. Wiltel, Inc.,* 1 F.3d 1201, 1205 (Fed. Cir. 1992); *see BayFirst Solutions, LLC v. United States*, 104 Fed. Cl. 493, 503 (2012)

(stating that for task orders, "[t]he standard to be applies . . . is provided by *AT & T*

*Communications*"). The Federal Circuit stated:

> [A] cardinal change . . . occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for.  By definition, then a cardinal change is so profound that it is not redressable under the contract, and thus renders the government in breach.

*See AT & T Comm'ns, Inc.,* 1 F.3d at 1205 (quoting *Allied Materials & Equip. Co. v.*

*United States,* 569 F.2d 562, 563-64 (Ct. Cl. 1978)).

Therefore, the question is whether the task orders substantially affect the type of

service the contractor "performs under the contract as a whole." *See id*. at 1206, n.3.

North Wind argues that the "change of this award from a small business, 8(a) set-aside to

a sole source large business award" is a cardinal change in scope. Pl.'s Reply at 14. The

court agrees with the government and Kūpono that the subject provision relates to a

change in the scope of "services" and North Wind has failed to identify a change to the

scope of the *services*. Kūpono's status as a firm that is other than small for this contract

does not impact the work, duties, or services performed under the contract. Because

North Wind has not shown that the actual work, duties, or services in the contract

changed, let alone fundamentally changed, in any of the task orders, the court concludes

that the task orders did not increase the scope of the contract.

The court also concludes that the task orders have not increased the period of the

contract. North Wind contends that the "task orders increased the period of Kūpono's

base contract award."  Pl. Mot. for J. on the Admin. R. ("Pl.'s MJAR") at 14.  Because

the contract will not be extended beyond its original completion date but will end

September 30, 2020, North Wind's argument fails.  *See* Def. Mot. for J. on the Admin. R. ("Def.'s MJAR") at 12-13 (citing AR 3665-66). The subject task orders fit within the time frame of the original contract and do not increase its term.[15]

Finally, to the extent North Wind argues that the task orders increased the value of the contract, that argument fails. *See* Pl.'s MJAR at 11. The value of the underlying IDIQ contract is $108,000,000.  AR 3400-01.  The combined value of the issued task orders is $42,378,613.  Because $42,378,613 does not exceed $108,000,000, there is no basis for asserting that the task orders have increased the maximum value of the contract. *See* Kūpono's MJAR at 16.

In sum, because North Wind has not shown that the task orders increase the scope, period, or value of the contract, the government's and Kūpono's motions to dismiss North Wind's claims related to task orders must be granted.

## CONCLUSION

For the reasons stated above, the court **GRANTS** the government's and Kūpono's motion to dismiss North Wind's claims challenging the issuance of task orders, and North Wind's complaint is **DISMISSED IN PART** accordingly for lack of jurisdiction. The court also **GRANTS** the government's and Kūpono's motions for judgment on the

---

[15] To the extent that North Wind seeks to establish jurisdiction over the task order by arguing the task order caused a contract modification which extended the contract, that argument is without merit. *See* Amend. Compl. ¶ 73 ("On information and belief, Modification No. 1 extended the base period of Kūpono's Contract to correspond with the two-year orders issued in September 2018."). The contract was modified on November 16, 2018 to extend the underlying IDIQ until September 2023 because the start date of the transition period was delayed. AR 3711-14. The awarded work under the IDIQ through the task orders will, as discussed above, end in September 2020.

administrative record for the remaining counts. Accordingly, the court **DENIES** North Wind's motions for judgment on the administrative record and request for injunctive relief. Finally, the court **GRANTS** Kūpono's motion to complete the administrative record with Exhibit A attached to Kūpono's Reply brief. No costs.

    **IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge
